HARRY, *alias* HENRY WILLIAMS, appellant, v. VITAL JARROT *et al.*, appellees.

*Appeal from St. Clair.*

The different Acts of the Legislature, abolishing the Court of Common Pleas and establishing the Supreme, County, and County Commissioner's Court have not clearly designated what Court shall be the depository of the books and records relating to indentured servants; such being the fact, and also, that some of them now remain with the clerks of the Circuit Court, and some with the clerks of the County Commissioners' Court, they are properly in the custody of either of those clerks. When offered in evidence in the county where they are kept, they are admissible in evidence on the testimony of the clerk of the Court, in whose custody they are, that they were found among the books and papers of the county in his office, and on further proof of the hand-writing of the clerk by whom the entries appear to have been made.

Parol evidence is not admissible to prove who was the administrator of an estate, such fact being a matter of record; the best evidence, therefore, is the record, and it should be produced, or accounted for, according to the rules of evidence.

The general rule of the common law is, that parol evidence is admissible to prove the sale, delivery and ownership of personalty. Exceptions to it introduced by statute, such as the registering of ships, recording bills of sale under the Statute of Frauds, and the like, grow out of the policy of the law, in relation to particular kinds of personalty, &c.

The sale bill of an administrator is not the written contract of the purchaser. The principle, which treats the auctioneer as the agent of the vendor and purchaser, and his memorandum as the written contract of the parties, has place only in those instances where, by law, the contract must be in writing. In other and different instances, it may be admissible, but it is neither higher, nor better evidence than parol.

As a general rule, it is true, that leading questions cannot be put on the examination in chief, but it has its exceptions. Some of these exceptions are, leading questions of introductory matter, leading and directing the mind and attention of the witness to the main question; to a witness hostile to the party calling him, and evidently adverse to him, or evasive, and such like. But they are only permitted under the exercise of a careful supervision, and sound discretion of the Court, where it appears essential to promote justice.

TRESPASS *vi et armis*, in the St Clair Circuit Court, May term 1843, before Hon. James Semple and a jury. Verdict for defendants. The case was brought to this Court by appeal, and submitted on abstracts and written arguments, and decided at the December term 1843, but the Opinion was not delivered until the present term.

*N. Niles,* *W. H. Underwood,* and *L. Trumbull,* for the appellant, in support of the errors assigned, cited the following authorities. Laws of Illinois Territory, 647, § 3; Ordinance, Art. VI. R. L. 57—Gale's Stat. 44; *Phœbe* v. *Jay,* Bre. 207; *Merry* v. *Tiffin,* 1 Missouri, 725; *Winny* v. *Whitesides,* Ib. 472; *Choisser* v. *Hargrave,* 1 Scam. 317; *Menard* v. *Aspasia,* 5 Peters, 104.

*J. L. D. Morrison,* for the appellees:

It is a settled rule, that if the copy of the record is good evidence, the original certainly is. Indentures of servants are authorized by law, and required to be made matters of record and preserved. Laws of Illinois Territory, 424.

Parol proof of the administratorship of Joseph A. Beaird was properly admitted, being connected with proof of the fact that the plaintiff was sold at the administrator's sale.

The Court overruled the motion for a new trial, upon the principle stated in 3 Wash. C. C. R. 58, "that the evidence submitted to the jury, and upon which their verdict was founded, was such as it was peculiarly their right to decide upon; and also, where the construction, given by the jury, to the evidence, was consistent with the justice of the case."

To induce the granting of a new trial, there should be strong probable grounds to believe that the merits of the case have not been fully and fairly tried, and that injustice has been done. *Harmon* v. *Thornton,* 2 Scam. 251.

The fact that the administrator made a note of the sale and purchase, and returned it to the Probate Court, does not make it such a written contract as can only be proven by itself; it is only a memorandum made by the administrator, which would, perhaps, bind himself, but, like a receipt, might be explained or contradicted by parol proof.

On a question of slavery or freedom, the same rules of evidence prevail as in other cases, concerning the right to property. Baldwin's C. C. R. 577.

A bill of sale is not necessary. 3 Peters' Dig. 536.

The errors alleged in relation to the instructions given to

the jury cannot be sustained. *Phœbe* v. *Jay*, Bre. 207; *Borders* v. *Borders*, 4 Scam. 341.

The Court will not instruct the jury upon abstract principles of law, not connected with the evidence at all.

The motion for a new trial was properly denied, because the affidavit does not show the use of diligence to obtain the newly discovered evidence. A new trial will not be granted on the ground of newly discovered evidence, if itappear that the evidence might, with reasonable diligence, have been procured upon the first trial. *Williams* v. *Baldwin*, 18 Johns. 489.

This is a suit avowedly brought to test the plaintiff's right to freedom, and the Court will be justly warranted, in affirming the judgment of the Court below, on the authority of the case of *Leigh* v. *Hodges*, 3 Scam. 18. The question was not, who owns the plaintiff, and who is entitled to his services, but was avowedly a question of indentured servitude. All the points material to the liberty of the plaintiff were decided in the case of *Borders* v. *Borders*, before cited.

The Court should be satisfied that manifest injustice has been done, before it will consent to disturb the verdict of the jury, formed upon their opinion of the weight of evidence, credibility of the witnesses, and the many minute circumstances detailed to them, which may reasonably be presumed, in support of a verdict, not to have been incorporated in a bill of exceptions, which professes to set out, not all the evidence on the trial, but only the *"material"* evidence, applicable to the points raised, and exceptions taken on the trial.

The Opinion of the Court was delivered by.

SCATES, J. Trespass *vi et armis*, in the common form. The general issue, and a special plea of justification were pleaded. The latter stated in substance, that the plaintiff, being a man of color, owned by, and owing service as a slave to John Beaird, in the State of Tennessee, and being over fifteen years of age, was brought by him into St. Clair county, in the Territory of Illinois, on the 10th day of October, 1814; and that on the 17th day of the same month and year, plaintiff went with Beaird before John Hay, clerk of the Court of

Common Pleas of said county, and, in Hay's presence, enter-
ed into an indenture, according to the Act of Sept. 17, 1807
concerning the introduction of negroes and mulattoes, to serve
said Beaird for eighty years from that date as an indentured
servant; and in which said indenture John Beaird covenanted
to pay plaintiff fifty dollars, at the expiration of said term;
and that said indenture was then and there recorded by said
Hay, as such clerk. That afterwards on or about the first of
December, 1814, while plaintiff was so held as an indentured
servant by said Beaird, said Beaird died, and Joseph Beaird
administered upon his estate, and as such administrator, came
into the possession of the plaintiff, and on or about the fifth
day of January, 1815, sold the benefit of said contract of ser-
vice, as part of the effects of said John Beaird, to Joseph A.
Beaird, a citizen of said Territory, who took and continued
in possession of plaintiff, as an indentured servant, until June,
1827, when he died. That N. Boismenue and Cecile Beaird
administered upon the estate of Joseph A. Beaird, and in like
manner took possession of plaintiff, and on the 28th day of
July, 1837, as such administrators, sold the benefit of the
contract, as part of Beaird's effects, to Vital Jarrot, the defend-
ant, who took possession of him; and that at the times men-
tioned in the declaration, plaintiff ran away from, and left the
service of said Jarrot, and against his will, and so he avows
and justifies the trespasses, in his own right, and McAdams,
as his servant, in compelling plaintiff to return to his service.
Traverse and issue. Trial by jury, and verdict for the de-
fendants, Jarrot and McAdams.

During the progress of the trial, there were several excep-
tions taken to the opinion of the Court, in relation to the tes-
timony, and the giving and refusing instructions; and also in
refusing a motion for a new trial: all of which are made part
of the record by a bill of exceptions containing all the testi-
mony, and an affidavit of newly discovered testimony.

By the plaintiff's testimony, the assault and battery, hand-
cuffing, and imprisonment were proven; and it was also pro-
ven, that Jarrot requested and directed McAdams to do what
was done by him.

V. L. Williams, on his examination in chief by the plaintiff, stated that he saw plaintiff in company with defendants and another man; that plaintiff was prostrate on the ground with his foot fastened to the stirrup, by which a horse dragged him along on the ground. On cross examination, defendants asked witness, "Did Jarrot tell them, there, not to hurt him?" This was objected to, but allowed by the Court, and answered, "Yes," to which plaintiff excepted.

The defendants proved, that plaintiff, aged about eighteen years, was brought into this Territory, by John Beaird, about the latter part of September, 1814, from the State of Tennessee, where plaintiff was, by witness understood to be, a slave.

The defendants then introduced a book, purporting to be a "Record of indentured servants for St. Clair county, beginning 3rd Nov. 1806, kept by John Hay, clerk of the Court of Common Pleas for St. Clair county;" and after proving by William C. Kinney, clerk of the Circuit Court of said county, that the book was found amongst the old books and papers of the county in his office, and by John Reynolds, the hand writing of John Hay, the defendants offered to, and did read in evidence with the permission of the Court, from said book, the following indenture:

"St. Clair county, Illinois Territory, ss. Be it remembered that on the 17th day of October of the year 1814, personally came before me the subscriber, clerk of the Court of Common Pleas of the said county, John Beaird of said county, and Harry, a negro boy, aged near upon sixteen, and who of his own free will and accord, did in my presence, agree, determine, and promise, to serve the said John Beaird, for the full space of time, and term of eighty years from this date. And the said John Beaird, in consideration thereof, promises to pay him, said Harry, the sum of fifty dollars, at the expiration of his said service. In testimony whereof, they have hereunto set their hands and seals the day and year first herein above written. Interlineation made before signing.

Mark of &#9587; Harry. [seal.]<br>John Beaird.          [seal.]

Signed and sealed in presence of John Hay, C. C. C. P."

The plaintiff objected to reading it, and excepted to the opinion of the Court.

The defendants proved by William A. Beaird, that John Beaird died in Dec. 1814, and then asked him who was John Beaird's administrator. To this plaintiff objected, the Court allowed the testimony, and plaintiff excepted. Witness answered that Joseph A. Beaird administered and sold plaintiff at the sale of intestate's personalty; that Joseph A. Beaird died in 1827, and that Scipio Beaird administered on his estate. The plaintiff introduced and read in evidence a certified copy of the letters of administration to Scipio Beaird, and also a certified copy of the bill of sale of Joseph A. Beaird's estate, made by Scipio Beaird, by which it appeared that "10 negroes, defer, sizes and sex" were sold to Scipio Beaird for $4000. Upon further examination of witness, he stated that plaintiff was one of the ten negroes mentioned in the bill of sale, and that Scipio Beaird purchased them all in his own name, but for the use and benefit of the widow and children of Joseph A. Beaird, deceased; and that Scipio Beaird died in 1837.

The defendants then read in evidence letters of administration *de bonis non* upon the estate of Joseph A. Beaird, granted to Cecile Beaird and Nicholas Boismenue. The defendants then proved by Nicholas Boismenue that he and Cecile, as administrators of Joseph A. Beaird, sold plaintiff as part of Beaird's estate, to the defendant Jarrot in 1837. To this plaintiff also objected, and excepted.

The defendants further proved by John Reynolds, that he was present at the sale made by Scipio Beaird, as administrator; that Scipio bought in the ten negroes, including plaintiff, for the estate, the old lady and the children of Joseph A. Beaird, and that the estate was perfectly solvent and owed no debts; that Scipio was a single man, living with the widow and children as one of the family, and that plaintiff served them all nine or ten years and up to the death of Scipio. Defendants then asked witness, "Did Cecile and Nicholas sell the plaintiff at administrator's sale, as a part of the estate of Joseph A. Beaird in 1837?"—answer, "certainly." To this question and answer plaintiff objected and excepted.

They also proved by Nicholas Boismenue, that he and Cecile sold plaintiff to Vital Jarrot, in 1837, as part of Joseph A. Beaird's estate.

The instructions given for the defendants were,

*First.* If the jury believe, from the evidence, that the plaintiff is an indentured servant, under the laws of the Illinois Territory, then, under the constitution of Illinois, the said plaintiff is bound to serve out the time of his service as such indentured servant.

*Second.* That by the laws of Illinois, the benefit of the contract of service of indentured servants, passed to the administrators of the master, and may be sold by said administrator, as a portion of his goods, chattels and effects.

The Court refused to instruct the jury for the plaintiff,

*First.* That they might find, either nominal damages, one cent, or exemplary damages, such as will operate as an example and a warning for all other persons, and against all future attempts.

*Second.* That exemplary damages can be given by juries as a punishment to the wrong doer, even though the plaintiff prove no damage actually sustained by him.

The giving the two first, and the refusal of the last two ininstructions were excepted to.

The newly discovered evidence was set forth in an affidavit made by N. Niles, plaintiff's attorney, and, in substance, that John D. Hughes, Probate Justice of St. Clair county, told affiant that the sale bill of John Beaird's estate, made by Joseph A. Beaird, his administrator, is in existence, and on file in his office; and that it appears, from said sale bill, that plaintiff was sold to John Reynolds in 1815, at the administrator's sale; and that these facts were unknown to this deponent, and, he believes, were unknown to the plaintiff or his other counsel, until after the trial. The affidavit sets forth a copy of the sale bill, which purports to have been made at Cahokia, on the 5th day of January, 1815; and the first article of property mentioned in it is a negro boy, named Harry, sold to John Reynolds for $450.

There are nine errors assigned:

*First.* In refusing to grant a new trial.

*Second.* The admission of verbal evidence of the sale of the personal property of Joseph A. Beaird.

*Third.* The admission of like evidence, to show who was the administrator of John Beaird.

*Fourth.* Admitting the book found in the clerk's office, &c., to be read in evidence.

*Fifth.* A general assignment of errors.

*Sixth.* Giving the first instruction asked by defendants.

*Seventh.* Giving the second instruction asked by defendants.

*Eighth.* Refusing the first instruction asked by plaintiff.

*Ninth.* Refusing the second instruction asked by plaintiff.

I shall not attempt to pursue this subject in the order of the assignment of errors. The first and fifth cover the whole ground, and might have been sufficient.

The first question raised, in the order of proceedings, was the question put to V. L. Williams. We are all of opinion that it was a proper question, as the direction of Jarrot became a part of the *res gestæ* then transpiring.

The record of indentures, we think, was properly admitted. The law required the clerk to keep such a book, and to make a record in it of all such indentures. Laws of Illinois Territory, 467, § 2, Act of 1807. By another Act of 1814, Dec. 13, Ib. 337, § 6, the common law jurisdiction, whether of a civil or criminal nature, then possessed by the Court of Common Pleas, was taken away, and vested in the Supreme Court. By the 13th section, 339, the Governor was authorized to appoint a clerk of the Supreme Court, established by that Act in each county, whose duty it was made to perform all the duties in his county, then required to be performed by the clerk of the Court of Common Pleas, except those which related exclusively to county business. The 14th section made it the duty of the clerk of the Supreme Court in each county, to demand of the clerk of the Court of Common Pleas all the books and papers in his possession, except those which related to the county business. The 15th

section transferred all the causes pending in the Common Pleas to the Supreme Court, and denied any concurrent jurisdiction to the former.    Ibid. 342, § 18; Ibid. 344, § 2.

By an Act passed Dec. 19, 1814, (Territorial Laws, 345,) a County Court was established, upon which was conferred the remaining powers of the Common Pleas, and upon its clerk, the remaining duties of the clerk of the Common Pleas.    On the 24th day of December, 1814, another Act was passed, professing to be explanatory as to the division of jurisdiction between the County and Supreme Courts, and the duties of their respective clerks, but which, to my apprehension, still leaves doubts in relation to the custody of this book of indentures.    We might have reasonably expected, that when a Court was abolished, and its jurisdiction parted out, some person, or place, would have been designated for the preservation of its records, public documents and papers. But here, the division has been of the jurisdiction.    There were many books and papers, which did not relate to any transaction of the Court in the exercise of its jurisdiction. Many ministerial acts were required to be performed by the clerk, such as keeping a record of marks and brands, a record of indentured servants, &c., which did not relate to the *county business,* if by that term we are to understand, matters within the *jurisdiction* of the Common Pleas.    The obscurity of the law has begotten confusion, for I understand that, in many counties, these records were delivered to the clerk of the Supreme Court, and are now in the custody of the clerk of the Circuit Court, his successor.    In other counties, they were delivered to the clerk of the County Court, and are now in the custody of the clerk of the County Commissioners' Court, which has succeeded to a part of its jurisdiction.

A similar confusion has been perpetuated, upon this subject, by subsequent legislation.    By the Act of 1819, (R. L. 457, sec. 1; Gale's Stat. 501,) every colored person is required to produce a certificate of his freedom to the clerk of the Circuit Court of the county in which he intends to settle, and the clerk is required to make an entry of it, before he is

allowed to reside here. By the Act of 1829, (R. L. 463, § 1; Gale's Stat. 506;) in order to obtain a residence, the certificate of freedom must be produced to the County Com- missioners' Court, and the negro shall likewise give bond, &c.

As the law has not clearly designated which officer should keep those records, we are of opinion that they are in proper custody, in the hands of either the clerk of the Circuit Court, or County Commissioners' Court; and that, when of- fered in evidence, in the county where they are kept, no fur- ther authentication than is here shown, is necessary to make them admissible in evidence. The indenture set forth is, in the opinion of the Court, upon its face, conformable to the laws then in force, and valid, as has been repeatedly held by this Court.

We are all of opinion, that parol evidence was inadmissible to prove who was the administrator of John Beaird. The law in force at that time authorized clerks of the Court of Common Pleas to issue letters of administration, (Territorial Laws, 195, § 1,) and required them to keep an entry of that fact. Ibid. 196, § 2. The law requires this written evidence to be preserved; it is the best, and should be produced, or ac- counted for, according to the rules of evidence.

The next question is predicated upon a supposed resem- blance to this, but we think it quite different. The general rule of the common law is, that parol evidence is admissible to prove the sale, delivery and ownership of personalty. Ex- ceptions to it, introduced by statute, such as the registering of ships, recording bills of sale under the Statute of Frauds, and the like, grow out of the policy of the law, in relation to particular kinds of personalty, &c. The bill of sale, in this instance, is not the written contract of the purchaser. The principle, which treats the auctioneer as the agent of vendor and purchaser, and his written memorandum as the written contract of the parties, has place only in those instances where, by law, the contract must be in writing. In other and different instances, it may be admissible, but it is neither higher nor better evidence than parol.

The question put to the witness Reynolds was objected to, we suppose, because it was leading. As a general rule, it is true, that leading questions cannot be put on the examination in chief, but it has its exceptions. Leading questions of introductory matter, leading and directing the mind and attention of the witness to the main inquiry; to a witness hostile to the party calling him, and evidently adverse to him, or evasive, and such like instances; but under the exercise of a careful supervision, and sound discretion of the Court, where it appears essential to promote justice. The sound and correct doctrine, we think, laid down by Mr. Greenleaf in his excellent Treatise on Evidence, Vol. 1, § 435, *et seq.* We perceive no danger in allowing such a direct question as this in this case.

We deem it unnecessary to notice the remaining grounds assigned for error, as the judgment will be reversed for the improper admission of parol testimony to the administratorship of Joseph A. Beaird.

Judgment reversed at the cost of the defendants, and cause remanded, with directions to award a *venire de novo.*

*Judgment reversed.*